UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal No. 16-cr-10253-IT |
| | * | |
| ARCELINO SILVA, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

April 6, 2017

TALWANI, D.J.

Defendant Arcelino Silva stands indicted on one count of Possession with Intent to Distribute Heroin, Fentanyl, and Cocaine, in violation of 21 U.S.C. § 841(a)(1). He seeks to suppress all statements he made to police and all evidence seized on May 1, 2016. For the reasons set forth below, Defendant's Motion to Suppress Statements and Evidence [#55] is DENIED.

I.      Background[1]

On the morning of May 1, 2016, two police officers were dispatched to an apartment complex in Holbrook, Massachusetts, for a reported assault and threats, including the threat from one individual that he "was going to get his 'piece.'" When the officers arrived, a tenant's houseguest ("Complainant #1") reported that she and two tenants were outside when another tenant, Jennifer Andrade (Defendant's girlfriend), drove by in a Chevy Cruze ("the vehicle") and made an obscene gesture. Complainant #1 reported further that a week earlier, she had seen Andrade's boyfriend counting money in the rear of the vehicle, with drugs in his lap, and she had

---

[1] The facts are derived from Holbrook Police Department Narrative Reports from the morning of May 1, 2016, Mot. Suppress Statements & Evid. Ex. B [#55-2], and from late that evening, Ex. C [#55-3].

1

complained to Andrade, and since then, whenever Andrade drove by, they had words. On this most recent occasion, following a verbal altercation between Complainant #1 and Andrade, Andrade spat in Complainant #1's face, while Andrade's boyfriend held Andrade back. A witness corroborated seeing Andrade spit in Complainant #1's face.

Andrade denied spitting on Complainant #1, and her boyfriend, the Defendant, denied threatening anyone or referencing a gun. Andrade consented to a search of the vehicle. No firearm was found.

While the officers were still on the scene, a male tenant ("Complainant #2") reported that Defendant "told him he would see him at midnight and show him what a real n**** could do." Complainant #2 expressed concern that Defendant would confront him when he arrived home from work that night. Complainant #2 also complained that Defendant had been selling drugs in the parking lot.

The officers made no arrests but indicated in the police report that they would request hearings in the Quincy District Court. Shortly after the officers' departure, Complainant #2 telephoned the police to report that Defendant was attempting to engage him in a physical altercation. When the officers returned, neither Defendant nor Andrade could be found.

An officer who had responded that morning relayed this information to Sgt. William D. Marble, Jr., when he arrived for his shift. She further informed Sgt. Marble that a Brockton Police detective stated that Defendant "was a known drug dealer and was believed to carry firearms." Sgt. Marble drove through the apartment complex numerous times to view the vehicle, but it was not there.

At approximately 10:50 p.m., Sgt. Marble located the vehicle parked in the fire lane of the parking lot. He observed a man, whom he recognized to be Defendant, sitting in the front

2

passenger seat with the interior light on. Defendant did not appear to notice Sgt. Marble, even though the sergeant was standing near the passenger front door. Sgt. Marble wrote in the report that, as Defendant opened the door and began to exit the vehicle, Sgt. Marble watched Defendant's hands out of concern that he may be armed. According to the report, "in the spot just before the door handle," Sgt. Marble observed a plastic baggie containing pills that he believed, based on his training and experience, to be Suboxone. Just after Defendant realized Sgt. Marble's presence, an unidentified woman exited the building, and Defendant began to walk toward her. Sgt. Marble asked Defendant about the pills, and he replied, "[They're] not mine." Sgt. Marble asked what they were, and Defendant responded, "[S]uboxone." When Sgt. Marble inquired if Defendant had a prescription, Defendant repeated, "[They're] not mine."

When Defendant again began to walk away from the vehicle, Sgt. Marble "ordered him to sit back down," which he did. At that time, Sgt. Marble summoned at least one other officer to the scene. Defendant stated multiple times that neither the Suboxone nor the vehicle belonged to him. Sgt. Marble informed him he was under arrest. A pat down uncovered several thousand dollars in cash. After Defendant was transported to the police station for booking, officers searched the vehicle, including its middle console, and uncovered bags of powdered substances later confirmed to be cocaine and heroin, several thousand dollars in cash, and additional evidence.

II.   Analysis

Defendant now seeks to suppress his statements to Sgt. Marble and the evidence seized during the search of the vehicle and his person.

*A. The Statements*

Defendant contends that his statements must be suppressed because he was arrested without probable cause. This argument is without merit.

"A seizure of the person within the meaning of the Fourth and Fourteenth Amendments occurs when, 'taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" Kaupp v. Texas, 538 U.S. 626, 629 (2003) (quoting Florida v. Bostick, 501 U.S. 429, 437 (1991)). "'[E]xamples of circumstances that might indicate a seizure, even where the person did not attempt to leave,' includ[e] 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" Id. at 630 (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980) (Stewart, J.)). Seizure does not occur in the context of a "minimally intrusive interaction[,] such as when police officers approach individuals on the street or in public places to ask questions." United States v. Ford, 548 F.3d 1, 4 (1st Cir. 2008). Under First Circuit precedent, a seizure requires the restraint of one's liberty "by either physical force or an assertion of authority." Id.

Although Defendant contends that he was seized for Fourth Amendment purposes when he exited the vehicle, no seizure occurred before Sgt. Marble ordered him to sit down. During this initial interaction, Sgt. Marble did not restrict Defendant's movement in any way. Sgt. Marble did not brandish a weapon or touch Defendant, and he was the only officer on the scene at the time. Sgt. Marble did nothing more than ask Defendant questions. Based on the totality of the circumstances, a reasonable person in Defendant's position would have understood he was

free to leave. For these reasons, Defendant was not seized when responded to Sgt. Marble's questions before Sgt. Marble ordered him to sit down, and his responses to Sgt. Marble's questions need not be suppressed.

Further, to the extent that Defendant seeks to suppress his statements after his arrest, the admission of these statements would not violate Fourth Amendment precepts because these additional statements do not appear to have been made in the context of an interrogation, and Defendant does not contend otherwise. See Rhode Island v. Innis, 446 U.S. 291, 299-300 (1980).

### B. The Evidence Seized

Defendant claims that the search did not fall within an exception to the warrant requirement. Again, this argument is without merit.

A warrantless search is "*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions," such as the exception for searches incident to lawful arrest. Arizona v. Gant, 556 U.S. 332, 338 (2009) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)).

#### 1. Lawfulness of the Arrest

A warrantless arrest must be supported by sufficient probable cause to justify the belief that the arrestee committed or was committing a crime. Devenpeck v. Alford, 543 U.S. 146, 152 (2004). While "[t]he probable-cause standard is incapable of precise definition," probable cause entails "a reasonable ground for belief of guilt," which "must be particularized with respect to the person to be searched or seized." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (citations and internal quotation marks omitted). In determining whether probable cause existed to make a warrantless arrest, the court "examine[s] the events leading up to the arrest, and then decide[s] 'whether these historical facts, viewed from the standpoint of an objectively reasonable police

5

officer, amount to' probable cause." Id. (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)).

Defendant's arrest did not take place in a vacuum. The Suboxone pills, for which Defendant did not have a prescription, were observed in plain view near Defendant's person and near the seat he was exiting, and two witnesses had previously reported Defendant selling drugs in that parking lot. Taking these facts together, Sgt. Marble had reasonable grounds for believing that Defendant unlawfully possessed the Suboxone, a controlled substance, with intent to distribute it.

Defendant argues that Sgt. Marble's statement in the police report that he identified the pills as Suboxone while Defendant was still in the car is "highly unlikely and not credible."[2] The report states only that Sgt. Marble "believed" them to be Suboxone, not that he had positively identified them at that juncture, but in any event, there is no dispute that he saw pills (and asked Defendant about them) and that Defendant identified the pills as Suboxone before Sgt. Marble placed him under arrest.

2. Evidence Seized from the Vehicle

"[C]ircumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" Gant, 556 U.S. at 343 (quoting Thornton v. United States, 541 U.S. 615, 632 (2004) (Scalia, J., concurring)). In some cases, "the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." Id. at 344.

---

[2] Defendant further argues that Sgt. Marble had no reason to watch Defendant's hands as he opened the door to the vehicle. Sgt. Marble had a reason for concern for his safety given that he had been told that Defendant was known by the Brockton Police to carry firearms; that, earlier in the day, Defendant repeatedly had threatened a tenant at that apartment complex with physical violence; and he had threatened to get a gun in another altercation that morning.

6

Defendant's arrest for possession of drugs with intent to distribute presents such a case. Given that Defendant was arrested shortly after exiting the vehicle, pills (which Defendant himself identified as Suboxone) had been observed in the vehicle, and Sgt. Marble was aware of reports that Defendant sold drugs out of a vehicle in the same parking lot in which the vehicle was parked, the police had grounds for searching the vehicle for evidence of the offense incident to Defendant's arrest. Accordingly, any evidence uncovered during that search is not subject to exclusion.

3. Evidence Seized from the Defendant's Person

To the extent that Defendant seeks to suppress evidence from his person, this argument also fails. In effectuating an arrest, an officer may search the arrestee's person "'in order to remove any weapons the arrestee might seek to use' and 'in order to prevent the concealment or destruction of evidence.'" Id. at 339 (quoting Chimel v. California, 395 U.S. 752, 763 (1969)) (emphases, internal quotation marks, and brackets omitted). Because Sgt. Marble searched Defendant's person incident to arrest, any evidence recovered as a result of that search of his person was obtained in compliance with the Fourth Amendment.

III. Conclusion

For the above-stated reasons, Defendant's Motion to Suppress Statements and Evidence [#55] is DENIED.

IT IS SO ORDERED.

Date: April 6, 2017                                     /s/ Indira Talwani
                                                        United States District Judge